OPINION OF THE COURT
Martin E. Ritholtz, J.
After the parties to an American Arbitration Association (hereinafter AAA) uninsured motorist arbitration exercised their peremptory challenges, and a neutral arbitrator and hearing date were designated, the respondent insurance company challenged the appointment of said arbitrator for cause, on the eve of the hearing, alleging partiality. Upon the arbitrator’s refusal to recuse himself, the respondent specified on the record the fact that said arbitrator was at that time actively involved in litigation, representing another claimant in an adversarial role with the respondent, and on that basis, the respondent could not participate in the scheduled arbitration. In the absence of respondent, the arbitration ensued and petitioner was awarded the sum of $10,000, which is the subject of the instant motion to confirm, pursuant to CPLR 7510, and respondent’s cross motion to vacate, pursuant to CPLR 7511 (b) (1).
Dilemma
It is well settled that a party wishing to object to an arbitrator’s purported partiality should do so immediately and *3 not await for the award (see, 5 NY Jur 2d, Arbitration and Award, § 149). Any claims related to the alleged bias of an arbitrator shall be deemed waived by a complaining party who proceeds with the arbitration after learning of the tainted relationship or interest of the arbitrator. (See, Matter of Siegel [Lewis], 40 NY2d 687, rearg denied 41 NY2d 901; Matter of Arner v Liberty Mut. Ins. Co., 233 AD2d 321; Matter of Lincoln Graphic Arts v Rohta/New Century Communications, 160 AD2d 871; Rose v Travelers Ins. Co., 118 AD2d 844.) On the other hand, sans a prehearing determination on the issue of partiality, a complaining party who intentionally abstains from participating in the scheduled arbitration does so at said party’s peril, not knowing whether the default award will be vacated.
In the instant matter, the respondent did not seek such a prearbitration determination from the court, and instead followed the practice summarized by Siegel, New York Practice (§ 596, at 959 [2d ed]): “An effort to disqualify an arbitrator for bias, to the extent that the court is to become involved with the issue at all — the hope, again, is that the arbitration forum itself will resolve the problem — should take place after an award has been made, either with an application to vacate the award or by way of resisting the winner’s effort to confirm it. It has been suggested that the courts may not even have the power to disqualify an arbitrator in advance of the arbitration proceedings, but in an appropriate case judicial intervention can probably be secured.” There is no question that the courts have the inherent power to disqualify an arbitrator before an award has been rendered where there is a real possibility that injustice will result. (See, Matter of Astoria Med. Group [Health Ins. Plan], 11 NY2d 128, 132; Matter of Excelsior 57th Corp. [Kern], 218 AD2d 528, 530; Matter of Grendi v LNL Constr. Mgt. Corp., 175 AD2d 775, 776; Rabinowitz v Olewski, 100 AD2d 539; Matter of Belanger v State Farm Mut. Auto. Ins. Co., 74 AD2d 938, 939; also see, 23 Carmody-Wait 2d, NY Prac § 141:121.) Nevertheless, to encourage such prearbitration relief would defeat the goal of arbitration as a cost-saving expedient process, and instead would promote and protract court litigation. Furthermore, as noted in Matter of Stevens & Co. (Rytex Corp.) (34 NY2d 123, 128): “Because arbitration is at bottom a consensual arrangement, resolution of this delicate question of disqualification, which has proved so vexing to the courts, ought to be resolved in the first instance by the parties to the agreement. As Mr. Justice White stated, concurring in *4 Commonwealth Coatings (393 U. S., at p. 151), ‘The judiciary should minimize its role in arbitration as judge of the arbitrator’s impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are better informed of the prevailing ethical standards and reputations within their business.’ ”
At first glance, it would appear that in the instant matter, the parties attempted to resolve the disqualification issue by themselves prior to the scheduled arbitration, and when that attempt failed, they avoided protracted litigation by first involving the court with the contested issue only after the award had already been issued. Upon a more careful review of the specific facts of this matter, the court is of the opinion that an institutional solution to the dilemma should have been employed in the first instance, and that the instant litigation could have been avoided, as well as the increasing volume of similar, unnecessary litigation.
Solution
It is undisputed that in a letter from the AAA to the parties, dated December 16, 1997, it was made clear that the AAA Accident Claims Arbitration Rules (Rules), effective January 1, 1996, would govern the arbitration. In accordance' with section 8 of the Rules, a list of nine members of the Accident Claims Panel was enclosed in the letter, and each party was given an opportunity within 20 days to peremptorily strike up to two names from the list. Pursuant to said procedure, the AAA appointed Steven Siegel, Esq., as the arbitrator from amongst the remaining names, and in a letter from the case administrator, Jenny A. Martinez, dated January 8, 1998, the parties were informed that the arbitration was to be held at said arbitrator’s office on February 11, 1998 at 2:00 p.m.
It appears that on the eve of the scheduled arbitration date, respondent’s counsel became aware of the fact that Mr. Siegel represented another claimant, Lorena Giraldo, in a pending motion to confirm an arbitrator’s award against the respondent herein, and that not only was said motion contested, there was also a cross motion pending by respondent seeking to vacate said award. Based upon this litigation, respondent’s counsel faxed a letter on February 10, 1998 to petitioner’s counsel, with a copy to Ms. Martinez of the AAA, raising the issue of Mr. Siegel’s impartiality, and seeking petitioner’s “consent to have Mr. Siegel recused as the arbitrator in this matter.”
On February 11, 1998, the following colloquy was placed on the record:
*5 “mr. arbitrator: Counsel for the Country-Wide Insurance Company has requested that I recuse myself because I have an appeal pending with Country-Wide Insurance Company. I have called the AAA to inquire as to whether or not that requires a recusal. I set forth for the record that I do have an appeal going with Country-Wide Insurance Company, but that that would have no effect or bearing on my decision making in this case. I was advised by the AAA to ask claimant’s attorney whether they will consent or join in the application for a recusal, and I’m asking counsel right now whether or not you want me to recuse myself.
“petitioner’s counsel: I would prefer that we go forward today. I mean, it is your call, but I would prefer that we go forward today.
“mr. arbitrator: I’m going to decline the invitation to recuse myself and ask you to proceed with the case.”
Whereupon, respondent’s counsel reiterated for the record his objection to Mr. Siegel serving as an arbitrator based on his impartiality, and also stated that there was no other recourse to preserving the objection than to refuse to participate in the arbitration.
It is the opinion of the court that had the subject AAA Rules been adhered to, the dilemma or impasse could have been resolved. Section 10 of the Rules, in pertinent part, provides as follows: “Qualifications of Arbitrator * * * An arbitrator shall disclose any circumstances likely to create a presumption of bias which might disqualify the arbitrator as an impartial arbitrator. Any party shall have the right to challenge the appointment of an arbitrator for reasonable cause. The AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.” From said rule the following procedure is prescribed: (1) After the appointment of an arbitrator and prior to the commencement of the arbitration, any party shall have the right to challenge such an appointment for reasonable cause; (2) the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties; and (3) said determination shall be conclusive. These Rules are definite and recognizable enough to “provide for a method of appointment of an arbitrator” (see, CPLR 7504; Short v Descoe Shoe Corp., 32 AD2d 621), and set forth an explicit and unambiguous procedure for determining whether an arbitrator should be disqualified, which should be controlling (see, Matter of De Laurentiis [Cinematografica de las Americas], 9 NY2d 503; Matter of Bern *6 stein v On-Line Software Intl., 232 AD2d 336; Marthan Equities v P. M. Realty Mgt. Corp., 216 AD2d 180; Greater Miami Baseball Club Ltd. Partnership v National League of Professional Baseball Clubs, 193 AD2d 513, lv dismissed and lv denied 82 NY2d 800; Thermasol, Ltd. v Dreiske, 78 AD2d 838, affd 52 NY2d 1069, cert denied 454 US 826; Short v Descoe Shoe Corp., supra; Matter of Franz Rosenthal Inc. [Tannhauser], 279 App Div 902, affd 304 NY 812; Investment Intelligence Sys. Corp. v Schwartz, NYLJ, Dec. 31, 1992, at 24, col 3; also see, 5 NY Jur 2d, Arbitration and Award, § 127; 23 Carmody-Wait 2d, NY Prac § 141:122). It is apparent from case law that the distinct purpose of these Rules was to obviate court litigation, and that an AAA ruling on a disqualification issue which pursuant to the Rules “shall be conclusive”, would be “final and binding” (see, Matter of D.M.C. Constr. Corp. v Nash Steel Corp., 41 NY2d 855, revg on dissenting opn of Shapiro, J., 51 AD2d 1040, 1042; Brewster Excavating Corp. v Woods Assocs., 162 AD2d 490).
Under the circumstances herein, where the challenged arbitrator, instead of referring the final determination of the disqualification issue to the AAA, made his own call, he has, in effect, violated section 10 of the Rules, and thereby “exceeded his power” (see, CPLR 7511 [b] [1] [iii]; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7511.-5, at 582). Upon receipt of a copy of the letter from respondent’s counsel dated February 10, 1998, the case administrator, Jenny A. Martinez,, should have immediately informed the parties as to who from the AAA would rule on the disqualification issue, whether a hearing on that issue was necessary, and when an expedited ruling would be issued. Even if this procedure had not been implemented, the challenged arbitrator on February 11, 1998 should have immediately referred the parties to the case administrator for a ruling. Since the arbitrator ignored the governing rule, the court finds that the default award was defective and, pursuant to CPLR 7511 (b) (1) (iii), the cross motion to vacate said award should be granted, and the motion to confirm should be denied.
Rehearing Before Same Arbitrator or Before a New Arbitrator?
As set forth in CPLR 7511 (d), upon vacating an award, the court may order a rehearing and determination of all or any of the issues either before the same arbitrator or before a new arbitrator. The issue of the purported impartiality of Mr. Sie *7 gel has not been properly resolved. It is well established that “[precisely because arbitration awards are subject to * * * judicial deference, it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded” (Matter of Goldfinger v Lisker, 68 NY2d 225, 230). The “ ‘basic, fundamental principles of justice require complete impartiality on the part of the arbitrator and mandate that the proceedings be conducted without any appearance of impropriety’ ” (Matter of Kern [303 E. 57th St. Corp.], 204 AD2d 152, 153, citing Matter of Fischer [Queens Tel. Secretary], 106 AD2d 314, 315-316). The proper standard of review for the disqualification of arbitrators is whether the arbitration process is free of the appearance of bias (Commonwealth Corp. v Continental Co., 393 US 145, supra; Matter of Excelsior 57th St. Corp. [Kern], 218 AD2d 528, supra; Rabinowitz v Olewski, 100 AD2d 539, supra). It is only necessary to demonstrate the potential for bias, and even a suggestion of impropriety or partiality by an arbitrator will not be sanctioned (see, Matter of Catalyst Waste-to-Energy Corp. [City of Long Beach], 164 AD2d 817, 820, lv dismissed 76 NY2d 1017). Many are the cases where a “reasonable inference” of partiality was sufficient to disqualify an arbitrator (see, e.g., Matter of Ossman v Ossman, 166 AD2d 896; Matter of Colony Liq. Distrib. [Local 669, Intl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers], 34 AD2d 1060, affd 28 NY2d 596). On the other hand, it has also been held that a “mere inference” of impartiality is insufficient to warrant interference with an arbitrator’s award (see, Rose v Lowrey & Co. 181 AD2d 418, 419). It is also well settled that mere “occasional associations between an arbitrator and a party * * * will not warrant disqualification of the arbitrator on the ground of the appearance of bias or partiality”, but rather, “[i]t must be shown that the arbitrator and the party or witness have some ongoing relationship” (see, Artists & Craftsmen Bldrs. v Schapiro, 232 AD2d 265, 266; Matter of Quentzel Plumbing Supply Co. v Quentzel, 193 AD2d 678; Milliken & Co. v Tiffany Loungewear, 101 AD2d 739; Matter of Labor Relations Section v Gordon, 41 AD2d 25; Matter of Perl [General Fire & Cas. Co.], 34 AD2d 748; Matter of Cross Props. [Gimbel Bros.], 15 AD2d 913, affd 12 NY2d 806). There is no clear precedent as to whether an arbitrator who serves as adversarial counsel against a party in another pending matter should be disqualified in the instant arbitration when said party alleges an appearance of partiality. There are borderline cases that imply some partiality, but reject any such claims *8 based on waivers (see, Matter of Baar & Beards [Oleg Cassini, Inc.], 30 NY2d 649; Matter of Labenski v Kraizberg, 234 AD2d 296; Palmieri v Insurance Co., 67 AD2d 967).
In light of the institutional mechanism of section 10 of the AAA Rules, the court need not rule now as to whether the rehearing of the arbitration should be remanded to Mr. Siegel or before a new arbitrator. It appears that since February 11, 1998, the Giraldo matter is no longer pending and a final determination was made on April 30, 1998. Nevertheless, the court finds that section 10 is binding on the parties, and that the issue of whether Mr. Siegel should be disqualified is to be referred back to the AAA. If necessary, a hearing on that issue should be held, and the AAA determination shall be “conclusive”. The court wishes to distinguish a prearbitration objection alleging the appearance of partiality or bias, which may be waived either by the failure to timely object, or by means of a “conclusive” determination on that issue, in accordance with specific rules accepted by the parties in the subject arbitration agreement. This is to be distinguished from a postarbitration allegation of “actual partiality” which may not be deemed waived (see, Matter of Milliken Woolens [Weber Knit Sportswear], 11 AD2d 166, 168; Matter of Miller [Weiner], 260 App Div 444). In other words, even if the AAA finds that Mr. Siegel should not be disqualified, and respondent remains dissatisfied, that determination shall be final and binding, without prejudice to any claims of actual partiality during the course of the arbitration proceeding which must be established by clear and convincing proof (see, Matter of 645 First Ave. Manhattan Co. v Kalisch-Jarcho, Inc., 220 AD2d 517; Matter of Public Empls. Fedn. [Dasrath], 191 AD2d 569; Siebert & Co. v Ponmany, 190 AD2d 544).
In conclusion, the parties are directed to contact the AAA within 30 days from the date of service of a copy of this order together with notice of entry, and are to follow the procedure set forth above.